UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RETINA ASSOCIATES OF WESTERN NEW
YORK, P.C.

|  |  |
|---|---|
| Plaintiff, | Case # 23-CV-6174-FPG |
| v. | DECISION AND ORDER |
| MCKESSON CORPORATION and MCKESSON SPECIALTY CARE DISTRIBUTION, LLC, | |
| Defendants. | |

## INTRODUCTION

Plaintiff Retina Associates of Western New York, P.C. ("RAWNY") instituted this breach of contract action against Defendants McKesson Corporation ("McKesson") and McKesson Specialty Care Distribution, LLC ("MSCD") (collectively, "Defendants") in New York State Supreme Court, Monroe County.  ECF No. 1-2.  Defendants removed the action to this Court and moved to dismiss RAWNY's breach of contract claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  ECF Nos. 6, 8.

As explained below, Defendants' motion to dismiss, ECF No. 6, is GRANTED, RAWNY's breach of contract claim is DISMISSED WITHOUT PREJUDICE, and RAWNY is granted leave to file an amended complaint no later than December 7, 2023.

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as RAWNY seeks an award of $400,000 in "past due rebates," ECF No. 1-2 at 10, and RAWNY is a citizen of New York and Defendants are citizens of Delaware and Texas.  ECF No. 1 at 3.  Removal is proper and timely under 28 U.S.C. §§ 1441(a)-(b), 1446.

**BACKGROUND**

RAWNY is a medical practice and a member of US Retina, an association of private retina practices.  ECF No. 1-2 ¶ 6.[2]  A GPO Participation Agreement ("GPO Agreement") between US Retina and McKesson[3] required US Retina members to purchase retina drugs through US Retina. *Id.*  In October 2017, US Retina entered into a Wholesale and Distribution Agreement ("Distribution Agreement") with McKesson, under which McKesson would supply US Retina with the drugs that US Retina members were required to purchase pursuant to the GPO Agreement. *Id.* ¶ 7.  RAWNY and McKesson "did not have a formal agreement at [that] time, as the relationship was required pursuant to the GPO." *Id.* ¶ 8.

The GPO expired in May 2021, but "the relationship between McKesson and RAWNY under the GPO remained." *Id.* ¶ 9.  RAWNY and McKesson began negotiating a "formal vendor agreement," and entered into a "Form of Participation Agreement" ("Participation Agreement") in August 2021. *Id.* ¶ 10.  The Participation Agreement required RAWNY to use McKesson as its primarily wholesale supplier of pharmaceutical products. *Id.*; *see also* ECF No. 1-2 at 142.

Under a "Master Agreement" with McKesson, US Retina facilitated vendor relationships with credit card companies.  ECF No. 1-2 ¶ 11.  Those companies would, in turn, provide rebates for those drug purchases to US Retina members. *Id.*  Because RAWNY needed to purchase large quantities of retina drugs in advance, the rebates RAWNY expected to receive each year were of particular importance. *See id.* ¶ 12.

With those rebates in mind, RAWNY selected a credit card from Key Bank, which provided "a 1.5% to 2% basis point" rebate for drug purchases. *Id.* ¶ 13.  The size of the rebate

---

[2] Unless otherwise noted, the facts are drawn from the complaint and attached exhibits, ECF No. 1-2.
[3] The complaint refers to defendants collectively as "McKesson" throughout, although, as explained below, it is not clear that Defendant McKesson, rather than Defendant MSCD, itself entered into any of the agreements at issue.

depended on whether the drug purchase was categorized as "regular spend" or "large ticket," with the former resulting in a larger rebate. *Id.* ¶¶ 14-15. Accordingly, "the choice of credit card processor vendor depended on how drug purchases are classified." *Id.* ¶ 15.

In October 2021, RAWNY's rebate statement from KeyBank indicated that RAWNY had earned $74,299.26 in rebates in the previous fiscal year. *Id.* ¶ 16. But RAWNY's executive director, Sherri White, had estimated that RAWNY would receive rebates worth much more, approximately $239,312.00. *Id.* White contacted KeyBank, who reviewed the spend level and classification submitted by McKesson's credit card processor, along with RAWNY's credit card transactions for the previous fiscal year. *Id.* ¶ 17. After this review, KeyBank determined that McKesson had processed RAWNY drug purchases above $10,000 as "large ticket," rather than "regular spend," causing the discrepancy between the rebate RAWNY expected and the rebate on the KeyBank statement. *Id.* ¶¶ 17-18. White investigated the matter further and concluded that the classification of RAWNY's purchases "as 'large ticket' stemmed from McKesson's decision to change its credit card processing vendor" without providing notice to RAWNY, which RAWNY alleges was required under paragraph 5(a) of the Participation Agreement. *Id.* ¶¶ 19-20. The "Notice Provision" of paragraph 5(a) states, as relevant here, "[t]o the extent MSCD receives notice from manufacturers regarding changes to credit card processing reimbursement applicable policies, MSCD shall provide notice to Customer of such changes as soon as reasonably practical." ECF No. 1-2 at 159; *see also* ECF No. 1-2 ¶ 20. Accordingly, in 2021, RAWNY sought reimbursement of the outstanding rebates from McKesson. ECF No. 1-2 ¶ 21.

McKesson "acknowledged the impact that its decision would have on its business partners and discussed them during a leadership meeting in January 2022." *Id.* ¶ 22. As a result, McKesson began "working to develop a new protocol and program coding for dealing with retina transactions

completed with a credit card" and informed RAWNY that it would "start facilitating 'retina' customers getting their expected rebates from customers' financial institutions" by processing transactions at the "lowest possible tier." ECF No. 1-2 at 171. About one month later, in an email to White, McKesson "denied its obligation to provide notice of credit card processing changes pursuant to the Participation Agreement." *Id.* ¶ 23.

To date, McKesson has not reimbursed RAWNY for the rebates it alleges it is owed under the Participation Agreement, "stemming from [McKesson's] failure to provide notice with respect to changes in credit card processing reimbursements." *Id.* ¶ 24. RAWNY alleges that, while it has performed all of its obligations under the Participation Agreement, McKesson failed to provide notice as required under the Participation Agreement, causing RAWNY to suffer "a significant loss in the amount of rebates it was rightfully owed for required drug purchases under the Participation Agreement." *Id.* ¶¶ 27-30.

## LEGAL STANDARD

To succeed on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the defendant must show that the complaint contains insufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement." *Id.* Instead, plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks and citation omitted). A pleading that consists of "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.  In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro.  Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

When deciding a motion under Rule 12(b)(6), a court ordinarily may not rely on matters outside the pleadings unless the court treats the motion for one as summary judgment under Rule 56 and gives the parties a reasonable opportunity to present relevant evidence.  *See* Fed. R. Civ. P. 12(d).  For the purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.")

**DISCUSSION**

RAWNY alleges that Defendants breached the Participation Agreement by failing to provide notice regarding changes to its credit card processing vendor. ECF No. 1-2 ¶¶ 25-30. Defendants argue that Plaintiff (1) has failed to state a claim against McKesson and (2) has failed to state a breach of contract claim as a matter of law. ECF No. 6-1 at 7-20. Before turning to Defendants' arguments, the Court first addresses the question of what law governs the dispute.

**I.  Choice of Law**

As a federal court exercising its diversity jurisdiction in New York, the Court must apply New York's choice-of-law rules to determine what law applies. *See Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). New York law also dictates the validity and scope of a contractual choice-of-law clause. *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332-33 (2d Cir. 2005); *Bausch & Lomb Inc. v. Mimetogen Pharm., Inc.*, No. 14-CV-6640-FPG, 2016 WL 2622013, at *6 (W.D.N.Y. May 5, 2016). And "New York law is unambiguous . . . . Absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020) (internal quotation marks omitted); *see also Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 94 (S.D.N.Y. 2021). Most courts have "deemed one party's incorporation in the state of the parties' chosen law" to be sufficient. *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540-41 (S.D.N.Y. 2020) (collecting cases).

Here, the Participation Agreement provides that "this [Agreement] and the rights of the parties will be construed, interpreted and determined in accordance with the laws of New York (without regard to any principle of conflict of laws under which the laws of any other jurisdiction

would apply)." ECF No. 1-2 at 153.  The parties do not dispute the validity of this choice-of-law

provision or its application to RAWNY's breach-of-contract claim against Defendants.  *See* ECF

No. 6-1 at 11; ECF No. 8 at 11.  Moreover, RAWNY is a New York corporation with a principal

place of business in New York that is licensed to treat patients in New York.  *See* ECF No. 1-2 ¶

1; *see also* ECF No. 1 at ¶ 7.  Because that is enough to establish a reasonable basis for the parties'

choice of New York law, *see Willis Re*, 550 F. Supp. 3d at 96, New York law governs RAWNY's

breach of contract claim.[4]

## II. The Breach of Contract Claim

Having  established  that  New  York  law  governs  this  dispute,  the  Court  now  turns  to

Defendants' motion to dismiss RAWNY's breach of contract claim.  Under New York law, to

"recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the

evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the

plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4)

damages to the plaintiff caused by that defendant's breach."  *Diesel Props. S.r.l v. Greystone Bus.

Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).  Defendant argues that RAWNY's breach of contract

claim must be dismissed because (1) Defendant McKesson is not a party to the Participation

Agreement and (2) RAWNY has failed to state a breach of contract claim as a matter of law.  ECF

No. 6-1 at 7-20.  As explained below, the Court agrees with Defendants.  However, as further

explained below, the Court will grant RAWNY leave to amend its complaint to cure these

deficiencies.

---

[4] The Court acknowledges that the New York Court of Appeals has held that "New York courts should not engage in
any conflicts analysis where the parties include a choice-of-law provision in their contract."  *Ministers & Missionaries*,
26 N.Y.3d 466, 474-75 (2015).  However, "this Court is technically bound to follow the Second Circuit's interpretation
of New York law [in *Moseley*] unless and until it is overruled by the Second Circuit itself or it is undermined by a
'more recent decision regarding New York law'" from the Court of Appeals.  *Willis Re*, 550 F. Supp. 3d at 94 (citations
omitted).  Whether the Court applies *Moseley* or *Minister & Missionaries* approach, the result is the same: New York
law governs.

a. **RAWNY's Notice Claim**

The Court begins with RAWNY's notice claim.  Whether the Notice Provision required Defendants to provide notice to RAWNY before changing their credit card processing vendor is a matter of contract interpretation, which is "generally a question of law" and therefore "suitable for disposition on a motion to dismiss." *irth Solutions, LLC v. S&S Utilities Engineering*, No. 19-CV-6183-FPG, 2019 WL 5694247, at *2 (W.D.N.Y. Nov. 4, 2019).  "Under New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) (citing *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)).  On a Rule 12(b)(6) motion, the Court need not accept the plaintiff's allegations regarding the construction of the contract, but instead can interpret the contract before it. *Id.*  However, "[a]t the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016).  "Whether a contract is ambiguous is a question of law for the court to decide," *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012), and "matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." *Cruden*, 957 F.2d at 976 (citing *Teitelbaum Holdings, Ltd. v. Gold*, 48 N.Y.2d 51, 56 (1979)).

A contract is ambiguous "if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Orchard Hill Master Fund*, 830 F.3d at 157 (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Trust Co.*, 773 F.3d 110, 114 (2d

Cir. 2014)).  "A contract is unambiguous, however, if the 'contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion.'"  *Id.* (quoting *Chesapeake Energy*, 773 F.3d at 110).  "The language of a contract is not made ambiguous simply because the parties urge different interpretations."  *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992).  Instead, a court analyzing a contract for ambiguity should apply the "normal rules of contract interpretation."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015).  That is, the court should give words and phrases their plain meaning, *id.*, which courts often ascertain by turning to a dictionary, *Fed Ins. Co. v. Am Home Assurance Co.*, 639 F.3d 557, 567 (2d Cir. 2011).  Finally, the court should construe the agreement "so as to give full meaning and effect to all of its provisions."  *Orlander*, 802 F.3d at 295.  In doing so, a court should not "consider particular phrases in isolation, but rather interpret them in light of the parties' intent as manifested by the contract as a whole."  *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013).

The Participation Agreement is unambiguous.  Even if Defendants failed to provide notice before changing their credit card processing vendor as RAWNY alleges, there is no reasonable basis to infer that such a failure amounted to a breach of the Participation Agreement's Notice Provision.  *Orchard Hill Master Fund*, 830 F.3d at 157.  As relevant here, Paragraph 5(a) of the Participation Agreement, which contains the Notice Provision, states:

> Customer shall pay either via Electronic Funds transfer ("EFT") or Automated Clearing House ("ACH"), or if an ophthalmology or retina customer, via credit card.  Customer acknowledges and agrees that all credit card payments may be subject to a two percent (2%) processing fee, to the extent that MSCD is not reimbursed for such credit card processing fees.  To the extent MSCD receives notice from manufacturers regarding changes to credit card processing reimbursement applicable policies, MSCD shall provide notice to Customer of such changes as soon as reasonably practical.

ECF No. 1-2 at 159.  In other words, RAWNY, as a "retina customer," could pay MSCD by credit card.  But, if it did so, it might also have to pay a 2% processing fee.  Whether RAWNY would have to pay that fee would depend on whether MSCD was reimbursed for such credit card processing fees.  And, if MSCD received "notice from *manufacturers* regarding changes to *credit card processing reimbursement applicable policies*," it would have to notify RAWNY of such changes.  *Id.* (emphasis added).

The plain language of the Notice Provision limits MSCD's notice obligations to "changes to credit card processing reimbursement applicable policies," not credit card processing policies in general.  That is, it does not apply to any policy or decision related to credit card processing, only those related to the reimbursement of credit card processing fees.  But RAWNY has not alleged that MSCD's change of its credit card processing vendor was a change in a "credit card processing reimbursement applicable polic[y]."  Instead, it has alleged that the change of credit card processing vendor reduced RAWNY's *rebates* from KeyBank.  *See* ECF No. 1-2 ¶¶ 13-19.

The Court cannot read "reimbursement applicable policies" to apply to a policy or decision regarding credit card processing that might affect the *rebates* paid to a customer by its credit card company because "reimbursement" and "rebate" mean different things.  When one party offers a "reimbursement" to another, it offers to "pay someone back" or "make restoration or payment of an equivalent amount."  *See Reimburse*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/reimbursement (last visited Oct. 4, 2023).  When a party offers a "rebate," by contrast, it offers to "return . . . a part of a payment."  *Rebate*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/rebate (last visited Oct. 4, 2023).  Section 17 of the Participation Agreement, which addresses "rebate[s], volume incentive[s] or other similar payment[s] based on Customer's purchase volume," and the conditions under which RAWNY

would forfeit those rebates, ECF No. 1-2 at 161, is consistent with this understanding of the term "rebate."[5] *See Gary Friedrich Enters.*, 716 F.3d at 313.  Given the plain meaning of these words, Plaintiff's interpretation would "strain the contract language beyond its reasonable and ordinary meaning." *Bausch*, 2017 WL 2835250, at *13.

Moreover, Plaintiff's preferred interpretation would require the Court to rewrite the Notice Provision, replacing "[t]o the extent MSCD receives notice from manufacturers regarding changes to credit card processing reimbursement applicable policies," with "to the extent MSCD makes changes to credit card processing policies." *See* ECF No. 1-2 ¶ 20 ("The Participation Agreement required McKesson to notify RAWNY of any changes regarding credit card processing reimbursements."); ECF No. 8 at 13 ("[T]he credit card processing clause found in Paragraph 5 . . . requires notice to RAWNY regarding any credit card processing change by Defendants.").  But where, as here, a term of the agreement is clear and unambiguous, the Court may not rewrite that term "under the guise of interpretation." *Cruden*, 957 F.2d at 976 (quoting *Fiore v. Fiore*, 46 N.Y.2d 971, 973 (1979)).  Instead, after giving all of the words and phrases their plain meaning, the Court concludes that the Notice Provision is unambiguous: MSCD was required to provide notice to RAWNY regarding changes in policies applicable to credit card processing reimbursements when it received notice from a manufacturer of such changes; it was not required to provide notice to RAWNY of any change to MSCD's credit card processing vendor.

The event that triggers MSCD's obligation to provide notice to RAWNY —"notice from manufacturers" to MSCD—further supports this conclusion.  ECF No. 1-2 at 149.  It makes no

---

[5] The Distribution Agreement is too.  That agreement was amended on March 30, 2018 to specifically address rebates from a credit card issuer, further supporting the distinction between "reimbursements" and "rebates."  *See* ECF No. 1-2 at 139.  Although US Retina, not RAWNY, was a party to the Distribution Agreement, RAWNY cites it in its complaint, *see* ECF No. 1-2 ¶ 7, and its opposition to Defendants' motion, *see e.g.*, ECF No. 8 at 5, 7, 8, 12 (citing Distribution Agreement and arguing that "the relationship between RAWNY and McKesson is set forth in Exhibits B and C," which include the Distribution Agreement and the Participation Agreement).

sense to condition MSCD's obligation to inform RAWNY of changes to its own credit card processing vendor on receiving notice of such a change from a manufacturer.  *See Samba Enters., LLC v. iMesh, Inc.*, No. 06 Civ. 7600, 2009 WL 705537, at *5 (S.D.N.Y. Mar. 19, 2009) ("A court should not interpret a contract in a manner that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'").   To avoid that unreasonable interpretation, the Court would have to conclude that the triggering language had no meaning.  But, under New York law, "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible."  *See Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988) (internal quotation marks omitted). Here, avoiding such an interpretation requires no more than interpreting the language of the Notice Provision according to its plain and ordinary meaning.  The Court therefore declines to read the Notice Provision in a way that would render meaningless the condition that triggers MSCD's notice obligation.

Because the Participation Agreement's language is unambiguous, RAWNY's appeals to extrinsic evidence are likewise unhelpful.  RAWNY directs the Court to prior agreements, such as the Distribution Agreement, and subsequent communications between RAWNY and Defendants. *See* ECF No. 1-2 ¶¶ 21-23 (referring to emails between the parties); ECF No. 8 at 7 (referring to, among other things, prior agreements and subsequent emails between the parties).  Because the Court has concluded that the Participation Agreement is unambiguous, "the intent of the parties can be fairly gleaned from the face" of the agreement, and the Court may not consider such extrinsic matters.  *Cruden*, 957 F.2d at 976.  The Court therefore declines RAWNY's invitation to do so.

The Participation Agreement is unambiguous.  It governs two things: (1) when RAWNY's credit card payments to MSCD may be subject to a 2.0% fee—that is, when MSCD is not reimbursed for the payment of credit card fees—and (2) when MSCD must provide notice to RAWNY regarding changes to "credit card reimbursement applicable policies"—that is, when a manufacturer has provided notice of such a change to MSCD.   There is no reasonable basis to interpret the Notice Provision as requiring MSCD to provide RAWNY with notice regarding changes to its own credit card processing vendors.  Accordingly, Defendants' failure to provide notice when they changed their own credit card processing vendor does not constitute a breach of the Participation Agreement.

### b.  RAWNY's Claim Against McKesson

In general, under New York law, "a breach of contract claim cannot be asserted against a non-signatory to the contract, unless a plaintiff pleads liability on veil piercing or alter ego theories." *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 391 (W.D.N.Y. 2021) (quoting *Array BioPharma, Inc. v. AstraZeneca AB*, 126 N.Y.S.3d 91, 92-93 (App. Div. 1st Dep't 2020)) (internal quotation marks and alterations omitted).   Under agency principles, however, "a principal will be bound under an agreement entered into by its agent on its behalf when the principal authorizes the agent to enter the agreement on its behalf or where the agent acts with apparent authority in entering the agreement." *Id.* (citing *Minskoff v. Am. Exp. Travel Related Servs.  Co.*, 98 F.3d 703, 708 (2d Cir. 1996)); *see also See v. Gov't Empls. Ins. Co.*, No. 21-CV-547, 2022 WL 2467695, at *7 (E.D.N.Y. March 22, 2022) (permitting breach of contract claim to proceed against corporate defendant on agency theory).   To survive a motion to dismiss, a plaintiff must allege facts, which, if proven, would establish that the plaintiff "reasonably believed that [the agent] entered into the agreement with [the plaintiff] on behalf of [the principal] and not on its own

behalf." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68-69 (2d Cir. 2003).  Like Plaintiff's notice claim, whether McKesson is a party to the contract turns on whether the Participation Agreement, which states that it is between "McKesson Specialty Care Distribution LLC ('MSCD') and Retina Associates of Western NY, P.C. ('Customer' or 'USR Member')," ECF No. 1-2 at 142, is ambiguous.  *See Buffalo Xerographix,* 540 F. Supp. 3d at 391.

Here, RAWNY has failed to sufficiently allege facts which, "considered as a whole, plausibly support an agency theory" for its breach of contract claim against McKesson.  *See See*, 2022 WL 2467695, at *7.  Throughout the complaint, Plaintiff refers to MSCD and McKesson collectively as "McKesson," obscuring whether McKesson or MSCD signed the relevant agreement.  *See e.g.,* ECF No. 1-2 ¶ 7 ("US Retina . . . entered into a Wholesale and Distribution Agreement . . . with McKesson"), ¶ 10 ("On or about, August 17, 2021, RAWNY entered into a Form of Participation Agreement . . . with McKesson").  But RAWNY's complaint does not allege facts about the relationship between MSCD and McKesson sufficient to support the inference that an agency relationship existed between them, such that McKesson could be liable as principal.  *See generally* ECF No. 1-2; *see also See*, 2022 WL 2467695, at *7 (concluding that plaintiff's allegations regarding the corporate structure of defendants were sufficient to support an inference of an agency relationship).

RAWNY instead points to three facts to support the existence of an agency relationship: (1) a McKesson employee accepted RAWNY's electronically signed Participation Agreement and other McKesson employees received copies of the signed agreement, (2) RAWNY's contacts under the Participation Agreement were McKesson employees using McKesson email accounts; and (3) RAWNY was required to purchase drugs directly from McKesson under the Distribution Agreement.  *See* ECF No. 8 at 14 (citing ECF No. 1-2).   Although it does appear that McKesson

employees both accepted the signed Participation Agreement and communicated with RAWNY regarding that agreement, that, without more is not enough to displace the unambiguous contractual language identifying MSCD alone as party to the Participation Agreement. *Compare Buffalo Xerographix*, 540 F. Supp. 3d at 393 (signatures by corporate parent's officers insufficient, without more, to displace contractual language indicating that officers signed contracts on behalf of subsidiaries), *with See*, 2022 WL 2467695, at *7 (allegations that, among other things, parent company performed substantially all insurance operations of subsidiary, only one entity was registered to do business, all entities have same telephone number, operate from the same address, and have the same website, and parent company officers signed insurance policies).

The Distribution Agreement is likewise unambiguous that McKesson Specialty Care Distribution Corporation[6] ("MSCDC"), not McKesson, is party to that agreement, and, accordingly, under that agreement, MSCDC "would supply US Retina with the drugs" that RAWNY was "required to purchase under the GPO." ECF No. 1-2 ¶ 7; *see Buffalo Xerographix*, 540 F. Supp. 3d at 393 (plaintiff did not state a plausible breach of contract claim against parent under agency theory where contract expressly identified subsidiary entity as contracting party even though subsidiary used parent's logo or corporate documents). And, as with the Participation Agreement, RAWNY has not alleged facts sufficient to support the inference that MSCDC was acting as an agent on behalf of McKesson in entering into the Distribution Agreement. *See Buffalo Xerographix*, 540 F. Supp. 3d at 393.

---

[6] According to Defendants, "MSCDC converted to [MSCD] on or about November 1, 2018, and they are one and the same entity." ECF No. 6-1 at 7. RAWNY has neither named MSCDC as a defendant nor included any factual allegations regarding the relationship between MSCDC and MSCD or MSCDC and McKesson. *See generally* ECF No. 1-2 at 5-10.

MSCD, not McKesson, is a party to the Participation Agreement, and Plaintiff has failed to plausibly allege that MSCD acted as McKesson's agent in entering into that agreement. Accordingly, Plaintiff has failed to state a plausible breach of contract claim against McKesson.

### III. Leave to Amend

RAWNY seeks leave to amend its complaint.   Specifically, pointing to both the Distribution Agreement and the Participation Agreement, it seeks leave to "add claims as Third Party Beneficiary and Agent." ECF No. 8 at 15.  Defendants contend that the Court should deny leave to amend because the Distribution Agreement is "irrelevant" and was "not in effect" at the time of the Participation Agreement.  *See* ECF No. 9 at 13.  Further, Defendants argue, whether RAWNY was a third-party beneficiary under the Distribution Agreement, the Participation Agreement "superseded it." *Id.*  As explained below, the Court grants RAWNY leave to amend both with respect to its proposed third-party beneficiary and agency claims and with respect to its claim against Defendant McKesson.

Under Fed. R. Civ. P. 15(a)(2), "the court should freely give leave [to amend a pleading] when justice so requires."  As the Second Circuit has explained, "the 'permissive standard' of Rule 15 'is consistent with our strong preference for resolving disputes on the merits.'"  *Lorely Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs.*, 797 F.3d 160, 190 (2d Cir. 2015) (quoting *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)).  However, a court need not grant leave where the proposed amendments would be futile because they would "fail to cure deficiencies or state a claim under Rule 12(b)(6)."  *Thea v. Kleinhandler*, 807 F.3d 492, 496-97 (2d Cir. 2015); *see also Orchard Hill Master Fund*, 830 F.3d at 160 (affirming district court's denial of leave to amend where plain language and structure of document unambiguously foreclosed plaintiff's claim).

Contrary to Defendants' assertion, it is not clear that amendment would be futile.  *Cf.*
*Orchard Hill Master Fund*, 830 F. 3d at 160.  While the Court has concluded that the unambiguous
language of the Participation Agreement's Notice Provision forecloses RAWNY's right to notice
as alleged, there may be facts that would be sufficient to state a plausible claim.  The Court cannot,
for example, rule out the possibility that Defendants' change in credit card vendors might have
resulted in a change to credit card reimbursement policies subject to the Notice Provision.
RAWNY is therefore granted leave to amend the complaint to properly assert a breach of contract
claim based on the Participation Agreement's Notice Provision if it "believes that [it] can allege
facts sufficient to state a plausible claim."  *See Harte v. Ocwen Fin. Corp.*, No. 13–CV–5410, 2014
WL 4677120, at *7 (E.D.N.Y. Sept. 19, 2014).

Moreover, the Court has not had the occasion to evaluate RAWNY's potential claims—
whether under a third-party beneficiary or agency theory—under the Distribution Agreement.
And, at this stage of the proceedings, the Court is not in a position to conclude that the Distribution
Agreement was no longer in effect at the time of the Participation Agreement or Defendants'
alleged breach such that amendment would be futile.  *See* ECF No. 1-2 at 29 ("This Agreement
will have an initial term of three (3) years beginning on [October 1, 2017] . . . this Agreement will
automatically renew for successive two (2) year periods unless either Party provides the other with
written notice of its intent not to renew this Agreement [within a specific timeframe].").  Moreover,
the Distribution Agreement and a 2018 amendment to it do address MSCD's obligations with
respect to the processing of credit card transactions.  *See* ECF No. 1-2 34, 138-39.  While it is not
clear that the Distribution Agreement governed any aspect of RAWNY's relationship with
Defendants at the time of the alleged breach, the Court is not convinced that its conclusion that the
Participation Agreement's Notice Provision is unambiguous renders amendments with respect to

17

RAWNY's rights under the Distribution Agreement futile at this time. *Cf. Orchard Hill Master Fund*, 830 F. 3d at 160. Accordingly, the Court grants RAWNY's request to amend its complaint to include the third-party beneficiary and agency allegations.

The Court also concludes that amendments with respect to an alleged agency relationship between Defendants would likewise not be futile. If RAWNY believes it can support the agency arguments it has raised in opposition to Defendants' motion, *see* ECF No. 8 at 10-11, it may amend its complaint to properly assert such claims. *See Harte*, 2014 WL 4677120, at *7.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 6, is GRANTED, and Plaintiff's Complaint, ECF No. 1-2, is DISMISSED WITHOUT PREJUDICE. Plaintiff is granted leave to amend its complaint to replead its breach of contract claim against Defendants MSCD and McKesson, and, if it chooses to do so, it must file its amended complaint by December 7, 2023. Defendants are directed to answer or otherwise respond to the amended complaint by December 28, 2023.

IT IS SO ORDERED.

Dated: November 7, 2023
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York